UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY RENEE STOKES,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF VISALIA,<br><br>    Defendant. | No. 1:17-cv-01350-DAD-SAB<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION<br><br>(Doc. Nos. 2, 12) |

This matter is before the court on plaintiff's motions for a temporary restraining order (Doc. No. 2) and a preliminary injunction (Doc. No. 12). The motions came on for hearing on November 21, 2017. Attorney Marla A. Tauscher appeared at the hearing telephonically on behalf of plaintiff Kimberly Renee Stokes. Attorney Leonard C. Herr appeared on behalf of defendant City of Visalia. Having reviewed the parties' briefing and heard arguments, and for the reasons that follow, plaintiff's motion for a temporary restraining order and motion for a preliminary injunction will be denied.

**BACKGROUND**

In her complaint plaintiff alleges as follows. Plaintiff lives in the City of Visalia and is the owner of three dogs, one of which is named Armani whose status is at issue in this action. (Doc. No. 1 ("Compl.") at ¶¶ 11–12.) On the morning of January 31, 2017, plaintiff's neighbor

1

Stephen Stewart ("Stewart") called Visalia Animal Control complaining that dogs belonging to plaintiff had attacked his dogs. (*Id.* at ¶ 14.) Animal Control officer Murad Bayless ("Bayless") went to Stewart's residence the same day and made a report documenting the incident, which included taking the statements of several eyewitnesses. (*Id.* at ¶ 15.) Plaintiff, who is a nurse and had been working the night shift the previous evening, was asleep in her home at the time of the incident. (*Id.* at ¶ 16.) While plaintiff was sleeping, two of her dogs—Armani and Mademoiselle—had found a weak plank in the fencing surrounding plaintiff's backyard and crawled out. (*Id.* at ¶ 17.) Plaintiff's dogs had never escaped her yard before, and have not done so since. (*Id.*)

After being awoken, plaintiff went outside and found her dog Mademoiselle sitting in the middle of the street. (*Id.* at ¶¶ 18–19.) Plaintiff then observed Armani sitting in Stewart's driveway and, upon approaching, saw Stewart and noticed that his hand was bleeding. (*Id.* at ¶ 22.) She then returned home with both of her dogs. (*Id.*) Shortly thereafter, Bayless went to plaintiff's house and seized both Armani and Mademoiselle. (*Id.* at ¶ 23.) Armani has remained at the Visalia Animal Control facility ever since. (*Id.*)

Upon seizing plaintiff's dogs, Bayless provided plaintiff with several documents, which he collectively referred to as a "vicious hearing packet." (*Id.* at ¶ 24.) One of these documents was entitled "Owner's Request for a Hearing," which stated in relevant part that plaintiff would be required to pay $350 in order to receive an administrative hearing to attempt to secure the return of her dogs. (*Id.* at ¶¶ 24, 25.) The form also provided that her failure to pay the fee would result in her request for hearing being considered invalid. (*Id.* at ¶ 25.)

An administrative hearing was held on February 13, 2017. (*Id.* at ¶ 28.) Plaintiff and two witnesses appeared at that time and attorney Thomas E. Hornburg ("Hornburg"), who was hired by defendant, presided over the hearing. (*Id.* at ¶¶ 28, 29.) At the outset of the hearing, Hornburg informed the participants that both Armani and Mademoiselle had been deemed "vicious" by Animal Control, and that the burden was on plaintiff to establish that her dogs were not vicious. (*Id.* at ¶ 31.) He also informed the participants that the hearing would be conducted in an informal manner, and that he could consider any evidence he deemed relevant to the issues at

2

hand, including hearsay evidence. (*Id.*) He also informed the participants that there would be no cross-examination of witnesses.[1] (*Id.*) Plaintiff and Stewart then recounted their recollections of the events at the hearing. (*See id.* at ¶¶ 33–54.)

On February 14, 2017, Hornburg issued a written decision in which he concluded that Mademoiselle was not vicious and should be returned to plaintiff, but that Armani was vicious and should be euthanized. (*Id.* at ¶¶ 56–57.) Plaintiff then filed a petition for a writ of mandate in the Tulare County Superior Court. (*Id.* at ¶ 60.) In May 2017, on the advice of her then-counsel, plaintiff agreed to dismiss that petition in exchange for an agreement to have Armani evaluated by professional dog trainers. (*Id.* at ¶¶ 62–64.) Two behavior assessments were then submitted to Hornburg, both of which concluded that Armani was not aggressive. (*Id.* at ¶ 65; Doc. No. 17-1 at 101–106.) Defendants, in turn, submitted a declaration by Animal Control supervisor Ivy Ruiz stating that she had observed aggressive behavior by Armani. (Compl. at ¶ 66; Doc. No. 17-1 at 96–97.) Plaintiff alleges that it had not been her desire to dismiss the petition for a writ of mandate, and that as a result she terminated her prior counsel who had advised her to do so. (Compl. at ¶ 68.) Plaintiff then secured a new attorney who filed a motion to set aside the dismissal, which was granted, and plaintiff's petition for a writ of mandate was reinstated in early July 2017. (*Id.* at ¶ 70.) On September 28, 2017, the Tulare County Superior Court denied the petition.

In her complaint, plaintiff asserts that her due process rights under 42 U.S.C. § 1983 have been violated, in several respects. First, she claims that she received inadequate notice regarding the February 13, 2017 administrative hearing. (*Id.* at ¶ 74.) Second, plaintiff claims that the burden of proof was unlawfully shifted upon her to affirmatively prove that her dogs were not vicious. (*Id.* at ¶¶ 92–99.) Third, plaintiff argues that she was unlawfully prohibited from cross-examining witnesses at the administrative hearing. (*Id.* at ¶¶ 100–07.) Fourth, plaintiff argues that Hornburg was biased in favor of defendant at the hearing. (*Id.* at ¶¶ 108–16.) Finally,

---

[1] Defendant disputes this allegation and has provided a transcript of the administrative hearing. A review of that transcript reveals that Hornburg never specifically stated that that cross-examination would be disallowed, but instead that he instructed the parties not to question each other, but to "direct everything towards [him]." (Doc. No. 17-1 at 54.)

3

plaintiff claims that Hornburg and defendant engaged in unlawful *ex parte* communication prior to the hearing. (*Id.* at ¶¶ 117–20.) Plaintiff seeks monetary damages and injunctive relief. (*Id.* at ¶¶ 121–29.)

**LEGAL STANDARD**

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The standard for issuing a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). A plaintiff seeking a preliminary injunction must make a showing on all four of these prongs. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The Ninth Circuit has also held that "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.* at 1134–35 (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc)).[2] The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do

---

[2] The Ninth Circuit has found that this "serious question" version of the circuit's sliding scale approach survives "when applied as part of the four-element *Winter* test." *All. for the Wild Rockies*, 632 F.3d at 1134. "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

4

more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief").

**DISCUSSION**

As noted, plaintiff must make a sufficient showing on all four prongs of the *Winter* test in order to be entitled to a preliminary injunction. *All. for the Wild Rockies*, 632 F.3d at 1135. Below, the court examines each prong in turn.

**A.     Likelihood of Success on the Merits**

First, plaintiff bears the burden of demonstrating that she is likely to succeed on the merits. At a minimum, this requires plaintiff to demonstrate that, on at least one of her claims, there are "serious questions" going to the merits of the claim. *Id*.

1.     <u>Adequacy of Notice</u>

Plaintiff first asserts that she received inadequate notice with respect to the administrative hearing. In order to pass constitutional muster, the government must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154, 1158 (9th Cir. 2016) (internal quotation marks and citations omitted). Plaintiff claims that notice of the hearing here was inadequate, in that she "had not received any notice that Armani had been deemed dangerous or vicious or that she would have to present evidence to overcome the presumption of his 'guilt.'" (Doc. No. 12 at 6.) Defendant asserts that this is incorrect as a factual matter and that, in any event, plaintiff has waived this argument.

In support of its position, defendant submits a declaration signed by Bayless. (Doc. No. 17-3 ("Bayless Decl.").) Bayless avers that upon taking Mademoiselle and Armani into custody following the incident, he notified plaintiff "that her dogs had been declared dangerous/vicious under the City's ordinance." (Bayless Decl. at ¶ 3.) According to Bayless, he also notified plaintiff that she had a right to appeal by way of an administrative hearing, but that she would be obligated to cover all fees associated with the impoundment and care of her animal during the pendency of the hearing. (*Id.*) Finally, Bayless declares that plaintiff was notified that additional

5

information regarding the hearing process could be found in the City of Visalia "Dangerous or Vicious Animals" Ordinance Code §§ 6.16.010–6.16.090.[3] (*Id.*) This notification was provided to plaintiff by way of a "City of Visalia Animal Services Report." (*Id.*) Plaintiff signed and dated this Report indicating that she had read and understood its terms and defendant has provided the court with a copy of this Report reflecting plaintiff's signature. (*See id.* at 5.)

The only evidence offered by plaintiff in support of her contention that she received inadequate notice with respect to the hearing is the allegations of her complaint which are essentially repeated in her motion for a preliminary injunction. By contrast, as indicated above, defendants have offered a sworn declaration that plaintiff was notified that (1) her dogs had been deemed vicious/dangerous, and (2) she would bear the burden at a subsequent hearing of proving that the dogs were not dangerous or vicious. *See Planned Parenthood Ariz., Inc. v. Humble*, 753 F.3d 905, 915–17 (9th Cir. 2014) (considering sworn declarations in determining whether the plaintiffs were likely to succeed on the merits). Moreover, defendant has come forward with a copy of the Report which plaintiff signed, in further support of the Bayless declaration. In light of this evidence, the court concludes plaintiff has failed to show that she is likely to succeed on the merits with respect to this aspect of her due process claim.

      2.     <u>Burden of Proof</u>

Second, plaintiff argues that her due process rights were violated because, at the hearing, "[t]he City unlawfully shifted the burden of proof" to plaintiff. (Doc. No. 12 at 7.) Plaintiff cites only the decision in *Speiser v. Randall*, 357 U.S. 513 (1958) in support of this contention.

In *Speiser* the Supreme Court held that the state had improperly shifted the burden of proof onto taxpayers to prove that they were not engaged in advocating the overthrowing of the government before being entitled to a tax exemption. 357 U.S. at 528-29. In that decision, however, the Supreme Court recognized that,

/////

---

[3] Pertinent for purposes of resolving the pending motions is § 6.16.050(C), which states that "[a]ny animal which has attacked, bitten or caused injury to a human being or other animal is presumed to be dangerous or vicious *and the burden is on the owner to present evidence that the animal is not dangerous or vicious*" (emphasis added).

> [i]t is of course within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion, "unless in so doing it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."

*Id*. at 523 (*quoting Snyder v. Commonwealth of Massachusetts*, 291 U.S. 97, 105 (1934)); *see also Patterson v. New York*, 432 U.S. 197, 201–02 (1977). The Supreme Court found that the state allocated burden of proof at issue in *Speiser* did offend such fundamental principles of justice because the conduct at issue involved, most importantly, freedom of speech as well as potential criminal liability. *Id*. at 523–29; *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 271 (1964). Thus, in concluding that the California statute at issue violated due process, the court concluded:

> we hold that when the constitutional right to speak is sought to be deterred by a State's general taxing program due process demands that the speech he unencumbered until the State comes forward with sufficient proof to justify its inhibition.

*Id*. at 528-29. The present case presents no such concerns.

Plaintiff does not explain how the decision in *Speiser* has any application here. Certainly, *Speiser* does not stand for the sweeping proposition that the burden of proof can *never* be shifted towards the party who may be deprived of her property. Indeed, as noted, in that case the court observed that "in most circumstances," the burden of proof could properly be placed on the taxpayer. *Id.* at 524–25. Although it is true that the city ordinance at issue placed the burden of proof and persuasion on the issue of whether her dogs were vicious on plaintiff, she fails to raise any "serious questions" as to how this constituted a violation of her due process rights. The court therefore concludes that plaintiff has failed to show she is likely to succeed on the merits of her claim with respect to misapplication of the burden of proof at the administrative hearing.

3. <u>Cross-Examination of Witnesses</u>

Plaintiff next contends that her due process rights were violated when she was prohibited from cross-examining witnesses at the hearing. Plaintiff cites only one case in support of this contention. *See Kelly v. Herak,* 252 F. Supp. 289, 297 (D. Mont. 1966), *aff'd on other grounds,* 391 F.2d 216 (9th Cir. 1968) (holding that a dismissed government employee was entitled to

7

cross-examine witnesses at a hearing before he could be terminated).  Plaintiff also argues that Hornburg's refusal to permit cross-examination at the hearing violated Visalia Municipal Code § 6.16.050(B), which states that "[t]he owner and animal control officer shall each have the right to call and examine witnesses; to introduce exhibits; to cross-examine opposing witnesses on any matter relevant to the issues at the hearing even though the matter was not covered in the direct examination . . ."  Defendant argues that plaintiff was in fact afforded the opportunity to cross-examine witnesses at the hearing.

Plaintiff's burden in moving for preliminary injunctive relief is to establish both the legal *and* factual basis upon which she is likely to succeed.  *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 428 (2006) (noting that the plaintiff had established a "prima facie case" in seeking a preliminary injunction); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. 2007) (same).  Here, plaintiff has not directed the court to any authority suggesting that being deprived the opportunity to cross-examine witnesses at an administrative hearing such as this one amounts to a violation of due process.  Indeed, similar administrative hearings have been upheld on due process grounds even when cross-examination was prohibited.  *See C. R. v. Seattle Pub. Sch.*, 693 Fed. Appx. 505, 507 (9th Cir. 2017)[4]; *Cent. Freight Lines, Inc. v. United States*, 669 F.2d 1063, 1068 (5th Cir. 1982) ("Cross-examination is ... not an absolute right in administrative cases."); *Cellular Mobile Sys., Inc. v. F.C.C.*, 782 F.2d 182, 198 (D.C. Cir. 1985) ("Cross-examination is ... not an automatic right conferred by the APA"); *Am. Pub. Gas Ass'n v. Fed. Power Comm'n*, 498 F.2d 718, 723 (D.C. Cir. 1974) ("Even in a formal adjudicatory hearing under the APA, ... cross examination is not always a right.").

Plaintiff's argument that the conduct of the hearing violated Visalia Municipal Code § 6.16.050(B), which allows cross-examination of witnesses, may have merit if she can establish that she was actually prevented from cross-examining witnesses.  However, violations of municipal ordinances, without more, do not automatically take on constitutional significance.  *See Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1060 (9th Cir. 2012) (holding that a city's

---

[4] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

8

violation of state law did not make the city liable under § 1983, since "not every violation of state law amounts to an infringement of constitutional rights"). Plaintiff has failed to show that the ability to cross-examine witnesses at the hearing was constitutionally mandated. Accordingly, plaintiff has failed to show a likelihood of success on the merits of her due process claim premised on the alleged prohibition of cross-examination at the hearing.

4. <u>Bias of Hearing Officer</u>

Plaintiff's fourth argument is that the hearing was constitutionally deficient because the hearing officer, Hornburg, was biased in favor of defendant. This is so, plaintiff argues, because "Hornburg is regularly hired by the City to preside over administrative hearings, which provides a financial incentive for him to decide matters in favor of the City or risk losing future employment." (Doc. No. 12 at 9–10.) Because of this, plaintiff contends that Hornburg "has a pecuniary interest in the outcome of hearings regardless of the evidence presented, which renders him biased." (*Id.* at 10.)

Plaintiff relies primarily on a decision of the California Supreme Court holding that a county's practice of appointing administrative hearing officers on an *ad hoc* basis violated due process. *See Haas v. County of San Bernardino*, 27 Cal. 4th 1017, 1024 (2002). In analyzing whether that arrangement violated due process, the court focused not on whether the particular adjudicator had exhibited any bias towards a particular party but rather "whether the economic realities make the design of the fee system vulnerable to a 'possible temptation' to the 'average man' as judge." *Id.* at 1029. In *Haas*, the county's procedure for appointing administrative hearing officers was found to violate due process because the prosecuting authority selected its adjudicator at will and must therefore "be presumed to favor its own rational self-interest by preferring those who tend to issue favorable rulings." *Id.* Because the hearing officer's prospects for future employment depended "entirely on the goodwill of the party paying the adjudicator's fee," the court found that the hearing officer had a "direct, personal, and substantial financial interest" in the outcome of the case. *Id.* at 1032.

Here, defendant argues that this case is readily distinguishable from *Haas*, since "Plaintiff fails to provide facts showing Mr. Hornburg to be hired *ad hoc*." (Doc. No. 17 at 7.) In support

9

of this contention, defendant submits a copy of the employment agreement between Hornburg and the city, which states that rather than being appointed on an *ad hoc* basis, Hornburg is employed for renewable two-year terms. (Doc. No. 17-1 at 242–49.) The length of the term appears to be the only substantive difference between the process employed by the City of Visalia and that rejected in *Haas*. The court in *Haas* found the appointment of hearing officers to run afoul of due process because "the officers' prospects for obtaining future ad hoc appointments depend solely on the county's goodwill and because the county, in making such appointments, may prefer those officers whose past decisions have favored the county." *Haas*, 27 Cal. 4th at 1020. That same incentive applies to the process employed by Visalia here. *See Lucky Dogs LLC v. City of Santa Rosa*, 913 F. Supp. 2d 853, 861 (N.D. Cal. 2012) (striking down a similar practice on due process grounds, stating that "while a two-year contract is preferable to a case-by-case, *ad hoc* appointment, it does not eliminate the *Haas* court's concern"). Even after the two-year term has expired, the agreement at issue here contemplates renewal unless one of the parties elects to terminate the agreement. (Doc. No. 17-1 at 242.) A hearing officer under a two year contract with the City of Visalia can therefore hope and expect that, if he performs his job adequately, the city will continue to employ him as a hearing officer.[5] *Thornbrough v. W. Placer Unified Sch. Dist.*, 223 Cal. App. 4th 169, 189 (2013) (interpreting *Haas* and determining that the practice in that case was constitutionally deficient because the county "was holding out the promise of *future employment*"). This expectation of reappointment provides an incentive for a hearing officer to rule in a manner more favorable to the county. *Haas*, 27 Cal. 4th at 1037 n.22 (suggesting that a county seeking to eliminate this financial incentive, and thereby comply with the requirements of due process, "might adopt the rule that no person so appointed will be eligible for a future appointment until after a predetermined period of time long enough to eliminate any temptation to favor the county"). The financial incentive in this case is all the more pronounced because, by the terms of the agreement, the hearing officer may be terminated at any time after sufficient notice

---

[5] Indeed, this appears to have occurred in this instance. The agreement submitted by defendant is dated January 26, 2011. (Doc. No. 17-1 at 242.) Given that Hornburg presided over the hearing at issue here on February 13, 2017, it would appear that the agreement between Hornburg and defendant was likely renewed at least three times.

has been given. (*Id.* at 247.) Thus, if defendant became dissatisfied with Hornburg's decisions it is free to terminate him, thus giving rise to a "possible temptation to the average man as a judge . . . not to hold the balance nice, clear and true." *Haas*, 27 Cal. 4th at 1031 (quoting *Tumey v. Ohio*, 273 U.S. 510, 532 (1927)).

Defendant argues that plaintiff has not come forward with evidence demonstrating actual bias on the part of Hornburg. However, such evidence is not required in order for a plaintiff to demonstrate that she has been denied her constitutional right to a fair hearing. *Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir. 1995). A plaintiff can establish a due process violation by showing that the hearing officer has a "pecuniary interest" in the outcome of the hearing. *Id.* at 742. A hearing officer under a contract such as the one employed by the city can either be renewed or terminated at will. This is evidence tending to show a pecuniary interest on the part of the hearing officer.

The court need not find "that it is more likely than not that [plaintiff] will win on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). All that is required on motion for injunctive relief is for the court to find that plaintiff has raised "serious questions" as to the legality of defendant's scheme. *All. for the Wild Rockies*, 632 F.3d at 1134–35. The court finds that as to her due process claim based on alleged bias inherent in Visalia's contract with its hearing officers, plaintiff has satisfied that burden.

5. *Ex Parte* Communication

Finally, plaintiff argues that she is likely to succeed on the merits of her claim that her due process rights were violated as a result of *ex parte* communications between Hornburg and defendant. In this regard, plaintiff contends that "[d]uring the February 13, 2017 hearing, no documentary or photographic evidence was provided to, or shown to, Stokes." (Doc. No. 12 at 10–11.) Nonetheless, plaintiff avers, Hornburg was in possession of photographs, police reports, and other documents provided to him in an *ex parte* communication by defendant and which she did not get access to until after the hearing. Defendant responds that plaintiff was provided all of the documentation that was subsequently provided to hearing officer Hornburg, and therefore had ample opportunity to respond to that evidence.

11

The court cannot conclude that plaintiff has shown she is likely to succeed on the merits of this due process claim. It does appears from the evidence before this court that at least some of the evidence considered by Hornburg was not provided to plaintiff until after the hearing, such as a narrative report prepared by Bayless, as well as several photographs. (*See* Doc. No. 18 at 10.)[6] Nonetheless, plaintiff has not demonstrated that the failure to timely provide her with those documents made it impossible for Hornburg to consider her arguments. Plaintiff merely asserts in a conclusory manner and without explanation that the failure to provide these documents to her earlier "resulted in ***prejudice to her.***" (*Id.*) Absent explanation, plaintiff has failed to make the required showing that she is likely to succeed on her due process claim based upon alleged *ex parte* communication between defendant and Hornburg.

In summary, the court finds that plaintiff has raised a serious question as to her due process claim challenging the City of Visalia's practice with respect to the appointment of hearing officers. As to plaintiff's other claims, the court does not find that plaintiff has raised serious questions or shown that she is likely to succeed on the merits of those claims.

**B.  Likelihood of Irreparable Harm**

In order to obtain a preliminary injunction, however, plaintiff must also demonstrate that the failure to grant preliminary injunctive relief is likely to result in irreparable harm. Plaintiff attempts to cast this as a matter of life and death, stating that "if a preliminary injunction is not issued, the City will kill Armani." (Doc. No. 12 at 16.) Defendant disputes this contention, stating that it "has said all along that it will not destroy Armani so long as litigation is pending and [plaintiff] pays for the boarding of her own animal." (Doc. No. 17 at 1.)

Based on defendant's representation to this court, on the record, that it will not destroy plaintiff's dog until these proceedings are resolved, the court finds that plaintiff has failed to demonstrate irreparable harm is likely.[7] The only harm that could conceivably accrue to plaintiff

---

[6] These documents were made a "matter of record" upon their lodging with the Tulare County Superior Court.

[7] Moreover, if plaintiff is unable to pay the boarding fees because of her present financial circumstances, defendant has indicated on the record that it is willing to consider a hardship waiver of those fees upon an appropriate showing by plaintiff.

12

is the boarding fee she must pay for defendant to continue housing Armani. This is a "mere financial injury," and "will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation." *Goldie's Bookstore, Inc. v. Superior Court of Cal.*, 739 F.2d 466, 471 (9th Cir. 1984) (citations omitted). In her complaint, plaintiff has sought compensatory damages, which could include reimbursement for boarding fees if plaintiff prevails. Accordingly, the court finds plaintiff has not demonstrated she will suffer irreparable harm if the requested injunctive relief is denied.

## CONCLUSION

For all of the reasons stated above, plaintiff's motion for a temporary restraining order (Doc. No. 2) and motion for a preliminary injunction (Doc. No. 12) are denied.[8]

IT IS SO ORDERED.

Dated: **December 11, 2017**

_____
UNITED STATES DISTRICT JUDGE

---

[8] The assigned magistrate issue has recently advised the parties with respect to how to perfect their request for referral to the court's Voluntary Dispute Resolution Program ("VDRP") pursuant to Local Rule 271. (Doc. No. 24.)

13