# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY RENEE STOKES,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF VISALIA,<br><br>Defendant. | Case No. 1:17-cv-01350-SAB<br><br>ORDER DENYING DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO BE PRODUCED FOR A DEPOSITION AS PREMATURE, DENYING DEFENDANT'S REQUEST FOR SANCTIONS, AND GRANTING IN PART PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER<br><br>ORDER VACATING MARCH 21, 2018 HEARING<br><br>(ECF Nos. 31, 32) |

Currently before the Court is Defendant's motion to compel Plaintiff to be produced for a deposition and request for sanctions and Plaintiff's motion for a protective order regarding her deposition, filed on February 16, 2018. (ECF No. 31.)[1]

On February 26, 2018, the Court vacated the February 28, 2018 hearing on Defendant's motion to compel and Plaintiff's motion for a protective order. (ECF No. 33.) As Plaintiff's February 22, 2018 motion for a protective order is the same as the February 16, 2018 motion, the Court will vacate the hearing on the February 22, 2018 motion which is set for March 21, 2018, at 9:30 a.m. and the parties will not be required to appear at that time.

---

[1] The Court notes that on February 22, 2018, Plaintiff filed a separate notice of motion for her motion for a protective order setting the oral argument on March 21, 2018. (ECF No. 32.) All of the motions are based on the February 16, 2018 joint statement. (ECF No. 31, 32.)

1

# I.

# BACKGROUND

On October 9, 2017, Plaintiff filed the complaint in this action. Plaintiff lives in the City of Visalia and is the owner of three dogs, one of which is named Armani, whose status is at issue in this action. (Complaint ("Compl.") at ¶¶ 11-12.) On the morning of January 31, 2017, plaintiff's neighbor Stephen Stewart ("Stewart") called Visalia Animal Control ("Animal Control") complaining that Plaintiff's dogs had attacked his dogs. (Id. at ¶ 14.) Animal Control officer Murad Bayless ("Bayless") went to Stewart's residence that day and wrote a report documenting the indecent, which included taking the statements of several eyewitnesses. (Id. at ¶ 15.) Plaintiff, who is a nurse and had been working the night shift the previous evening, was asleep in her home at the time of the incident. (Id. at ¶ 16.) While Plaintiff was sleeping, two of her dogs—Armani and Mademoiselle—had found a weak plank in Plaintiff's backyard fencing and crawled out. (Id. at ¶ 17.) Plaintiff's dogs had never escaped her yard before, and have not done so since. (Id.)

After being awoken, Plaintiff went outside and found Mademoiselle sitting in the middle of the street. (Id. at ¶¶ 18-19.) Plaintiff then observed Armani sitting in Stewart's driveway. (Id. at ¶ 22.) Upon approaching, she saw Stewart and noticed that his hand was bleeding. (Id.) She then returned home with both of her dogs. (Id.) Shortly thereafter, Bayless went to Plaintiff's house and seized Armani and Mademoiselle. (Id. at ¶ 23.) Armani has remained at the Visalia Animal Control facility ever since. (Id.)

Upon seizing Plaintiff's dogs, Bayless provided Plaintiff with several documents, which he collectively referred to as a "vicious hearing packet." (Id. at ¶ 24.) One of these documents was entitled "Owner's Request for a Hearing," which stated in relevant part that Plaintiff would be required to pay $350 in order to receive an administrative hearing to attempt to secure the return of her dogs. (Id. at ¶¶ 24-25.) The form also provided that her failure to pay the fee would result in her request for hearing being considered invalid. (Id. at ¶ 25.)

An administrative hearing was held on February 13, 2017. (Id. at ¶ 28.) Plaintiff and her two witnesses appeared at that time and attorney Thomas E. Hornburg ("Hornburg"), who was

hired by Defendant, presided over the hearing. (Id. at ¶¶ 28-29.) At the outset of the hearing, Hornburg informed the participants that both Armani and Mademoiselle had been deemed "vicious" by Animal Control, and that the burden was on Plaintiff to establish that her dogs were not "vicious." (Id. at ¶ 31.) He also informed the participants that the hearing would be conducted in an informal manner, and that he could consider any evidence he deemed relevant to the issues at hand, including hearsay evidence. (Id.) In addition, he informed the participants that there would be no cross-examination of witnesses. (Id.) Plaintiff and Stewart then recounted their recollections of the events at the hearing. (Id. at ¶¶ 33-54.)

On February 14, 2017, Hornburg issued a written decision in which he concluded that Mademoiselle was not vicious and should be returned to Plaintiff, but that Armani was vicious and should be euthanized. (Id. at ¶¶ 56-57.) Plaintiff then filed a petition for a writ of mandate in the Tulare County Superior Court. (Id. at ¶ 60.) In May 2017, on the advice of her then-counsel, Plaintiff agreed to dismiss that petition in exchange for an agreement to have Armani evaluated by professional dog trainers. (Id. at ¶¶ 62-64.) Two behavior assessments that determined that Armani was not aggressive were submitted to Hornburg. (Id. at ¶ 65.) Defendants, in turn, submitted a declaration by Animal Control supervisor Ivy Ruiz stating that she had observed aggressive behavior by Armani. (Id. at ¶ 66.) After receiving Hornburg's second decision in late June 2017, Plaintiff terminated her prior counsel. (Id. at ¶¶ 62-64, 68.) Plaintiff then secured a new attorney who filed a motion to set aside the dismissal, which was granted, and Plaintiff's petition for a writ of mandate was reinstated in early July 2017. (Id. at ¶ 70.) On September 28, 2017, the Tulare County Superior Court denied the petition. (Id. at ¶ 71.)

In her complaint, Plaintiff asserts that her due process rights under 42 U.S.C. § 1983 have been violated. First, she claims that she received inadequate notice regarding the February 13, 2017 administrative hearing. (Id. at ¶ 74.) Second, Plaintiff claims that the burden of proof was unlawfully shifted upon her to affirmatively prove that her dogs were not vicious. (Id. at ¶¶ 92-99.) Third, Plaintiff argues that she was unlawfully prohibited from cross-examining witnesses at the administrative hearing. (Id. at ¶¶ 100-107.) Fourth, Plaintiff argues that Hornburg was biased in favor of Defendant at the hearing. (Id. at ¶¶ 108-116.) Finally, Plaintiff claims that

1  Hornburg and Defendant engaged in unlawful ex parte communication prior to the hearing. (Id. at ¶¶ 117-120.) Plaintiff seeks monetary damages and injunctive relief. (Id. at ¶¶ 121-129.)

On February 16, 2018, Defendant filed a notice of motion and motion for Defendant's motion to compel and request for sanctions and Plaintiff's motion for a protective order. (ECF No. 31.) The parties' joint statement for these motions was attached to the motion. (ECF No. 31-1.) On February 22, 2018, Plaintiff filed a notice of motion and motion for a protective order, which is the same as the February 16, 2018 motion. (ECF No. 32.) The February 22, 2018 motion is also based on the February 16, 2018 joint statement.

## II.

## STANDARD

Motions to compel are governed by Federal Rule of Civil Procedure 37, which states, in pertinent part:

> **(a) Motion for an Order Compelling Disclosure or Discovery.**
> **(1)** *In General.* On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

Fed. R. Civ. P. 37.

Depositions are governed by Federal Rule of Civil Procedure 30, which states:

> **(a) When a Deposition May Be Taken.**
> **(1)** *Without Leave.* A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2). The deponent's attendance may be compelled by subpoena under Rule 45.
> **(2)** *With Leave.* A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2):
> **(A)** if the parties have not stipulated to the deposition and:
> **(i)** the deposition would result in more than 10 depositions being taken under the rule or Rule 31 by the plaintiffs, or by the defendants, or by the third-party defendants;
> **(ii)** the deponent has already been deposed in the case; or
> **(iii)** the party seeks to take the deposition before the time specified in Rule 2(d), unless the party certifies in the notice, with supporting facts, that the deponent is expected to leave the United States and be unavailable for examination in this country after that time; or
> **(B)** if the deponent is confined in prison.

Fed. R. Civ. P. 30.

1  Rule 26(b)(1) provides that a party "may obtain discovery regarding any nonprivileged
2  matter that is relevant to any party's claim or defense and proportional to the needs of the case,
3  considering the importance of the issues at stake in the action, the amount in controversy, the
4  parties' relative access to relevant information, the parties' resources, the importance of the
5  discovery in resolving the issues, and whether the burden or expense of the proposed discovery
6  outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information need not be admissible in
7  evidence to be discoverable. Fed. R. Civ. P. 26(b)(1). The December 2015 amendment to Rule
8  26 was to restore the proportionality factors in defining the scope of discovery. See Advisory
9  Committee Notes to Rule 26(b)(1) 2015 Amendment. Under the amended Rule 26, relevancy
10 alone is no longer sufficient to obtain discovery, the discovery requested must also be
11 proportional to the needs of the case. In re Bard IVC Filters Prod. Liab. Litig., 317 F.R.D. 562,
12 564 (D. Ariz. 2016).

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevancy to the subject matter of the litigation "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc., 437 U.S. 340, 351 (1978). Discovery is designed to help define and clarify the issues. Id. Although relevancy is broadly defined for the purposes of discovery, it does have "ultimate and necessary boundaries." Gonzales v. Google, Inc., 234 F.R.D. 674, 680 (N.D. Cal. 2006) (citations omitted).

Discovery may be limited by a protective order pursuant to Rule 26(c), which provides, in pertinent part:

> **(c) Protective orders**
> **(1) In General.** A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending — or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
> **(A)** forbidding the disclosure or discovery;

5

      **(B)**    specifying terms, including time and place or the allocation of expenses, for the disclosure of discovery;
      **(C)**    prescribing a discovery method other than the one selected by the party seeking discovery;
      **(D)**    forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
      **(E)**    designating the persons who may be present while the discovery is conducted;
      **(F)**    requiring that a deposition be sealed and opened only on court order[.]

Fed. R. Civ. P. 26(c).

## III.

## DISCUSSION

The parties have filed cross-motions on the issue of Plaintiff's deposition, which is set for March 6, 2018. First, the Court addresses Plaintiff's argument that Defendant's motion to compel is premature and that the parties have not met and conferred regarding the motion to compel. The subject matter of the motion to compel is the same as Plaintiff's motion for a protective order. Both motions are addressing whether Plaintiff should be orally deposed and the scope of any deposition. They are two sides of the same coin. Therefore, the meet and confer efforts have addressed the subject of both motions. However, Plaintiff has not failed to attend her deposition or indicated that she will not attend her deposition. Plaintiff's counsel indicated that if Defendant noticed Plaintiff's deposition, then Plaintiff would file a motion for a protective order. Based on the circumstances, it was not necessary for Defendant to file a motion to compel. Therefore, the Court denies Defendant's motion to compel as premature. Next, the Court addresses Plaintiff's motion for a protective order. Since the deposition has been duly noticed for March 6, 2018, the Court assumes that the Plaintiff will be taking the prudent approach of appearing, for a failure to appear <u>for any reason</u> could result in another motion to compel plus sanctions and costs to the offending party.

The issues before the Court are whether Plaintiff should be produced for an oral deposition, and if so, whether there should be any restrictions on the subject matter of that deposition. Plaintiff wants to only be questioned by written interrogatory. In the alternative, she wants to limit the scope of the deposition and demand for documents to the five ways she contends that her due process rights were violated. Plaintiff argues that her deposition exceeds

the proper scope of discovery under Rule 26 because it seeks irrelevant information and the discovery sought is not important information. Defendant asserts that it is necessary to depose Plaintiff because she is the most pivotal person to her case and it wants to depose her on relevant matters beyond the five ways she contends that her due process rights were violated. A party to the litigation has this right. Plaintiff selected a federal civil action requesting forms of relief and the defendant has a right to depose a party under the rules. The rules are straightforward and plaintiff provides no authority to the contrary.

Next, the Court determines whether Plaintiff should be subject to an oral deposition in this matter. Plaintiff brought this action pursuant to 42 U.S.C. § 1983 for an alleged violation of her due process rights. While Plaintiff's claim is based on the way Defendant conducted an administrative hearing, this is not an appeal of that administrative matter. Although Plaintiff believes that fact discovery is not necessary or appropriate in this action, Defendant is entitled to conduct discovery regarding Plaintiff's claims and Defendant's defenses pursuant to the limitations of Rule 26(b)(1). There are relevant matters that Defendant is entitled to depose Plaintiff on that would be proportional to the needs of this action. Plaintiff admits that she may have knowledge of relevant issues such as the adequacy of the administrative hearing and evidence that was presented to the hearing officer, but not presented to her in advance of or at the administrative hearing.

Defendant points out that it seeks information about Plaintiff's request for compensatory damages and punitive damages and causation issues, which, in general, would be relevant information and proportional to the needs of this action. Plaintiff has not presented an adequate reason why she should not be subject to an oral deposition by Defendant other than her belief that Defendant can obtain the same information through written interrogatories. The Court does not see anything unique in this case that would limit the questioning of Plaintiff in this matter to written interrogatories. As noted above, Plaintiff filed this Section 1983 case and Defendant is entitled to utilize the discovery mechanisms available to it. Therefore, the Court finds that Plaintiff should be subject to an oral deposition in this action. Plaintiff is required to attend her deposition noticed for March 6, 2018. Plaintiff is cautioned that failure to cooperate in having

her deposition taken by Defendant will result in the imposition of sanctions.

The Court will next address whether the scope of Plaintiff's deposition and the documents to be produced at Plaintiff's deposition should be limited. Although Plaintiff wants to limit her deposition to only the five ways that Defendant allegedly violated her due process rights, there are other relevant areas that are proportional to the needs of this case that Defendant is entitled to depose Plaintiff on. Defendant points out that it seeks information about Plaintiff's prayer for compensatory damages, Plaintiff's prayer for punitive damages, causation issues, issues of res judicata, and Plaintiff's demand for injunctive relief. While Defendant does not have free reign over any subject matter during a deposition, relevant evidence is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc., 437 U.S. at 351. The Court next addresses the areas of the deposition notice and anticipated questioning that Plaintiff contends exceed the scope of discovery under Rule 26(b).

First, Plaintiff takes issue with Defendant's demand for any and all statements from any persons with information regarding her claim for damages. Plaintiff asserts that a portion of her damages is for attorney's fees, so this request is for privileged information. Plaintiff contends that attorney's fees are protected by attorney-client privilege and not subject to disclosure. She agrees to produce documentation for the amounts of expenses for which she claims damages, including payments she made to Defendant for Armani's boarding fees. While Plaintiff does not want to produce statements regarding attorney's fees as part of the damages information, attorney's fees are not a part of damages. See Motorola, Inc. v. Fed. Exp. Corp., 308 F.3d 995, 1007 n.13 (9th Cir. 2002). Plaintiff contends that if and when damages are assessed, she could and would produce written evidence to substantiate the nature and amount of any damages. She asserts that there are other ways besides deposition for ascertaining damages. However, if Defendant wants to depose Plaintiff regarding damages in this matter, Defendant is free to do so unless information is privileged or prohibited by further order of this Court.

Second, Plaintiff takes issue with Defendant's demand for any and all documents regarding any social media posts made by Plaintiff or other persons regarding Armani. Plaintiff

asserts that this is not relevant to whether her due process rights were violated in Defendant's conduct of the administrative hearing. Plaintiff also asserts that production of any and all social media posts by third parties is unduly burdensome as she does not have access to such information. In response, Defendant states that it is not requesting production of any and all social media posts about Armani, but those that she has actual possession, custody, or control thereof or the legal right to obtain the property on demand. Given the liberal standard for relevancy, the Court finds that postings made by Plaintiff and third parties on any social media device or social media program are permissible discovery in this action. The Court finds that it is relevant and proportional to the needs of this case for Plaintiff to produce the social media posts that she has actual possession, custody, or control thereof or the legal right to obtain the property on demand.

Third, Plaintiff takes issue with Defendant's demand for any and all documents related to the amount of money Plaintiff has received from donors and the donors' information as a result of an online crowd-funding campaign ("Go Fund Me"). She contends that Defendant can look at the website to see how much money has been pledged by third parties. She also contends that she does not have the contact information for donors. Defendant responds that the amount of money that Plaintiff has received in donations for costs in this matter may bear on compensatory damages and the appropriate recipient of them. Defendant does not provide any authority to support this proposition, and the Court is unaware of any. Further, "[u]nder the collateral source rule, 'benefits received by the plaintiff from a source collateral to the defendant may not be used to reduce that defendant's liability for damages.' " McLean v. Runyon, 222 F.3d 1150, 1155-56 (9th Cir. 2000). The Court also notes that the information regarding how much money the Go Fund Me page has raised and the donors' information, except for anonymous donors, is public information on the Go Fund Me page itself. Therefore, the Court finds that Plaintiff shall not have to produce any documents or be deposed regarding the amount of money and the donors for the Go Fund Me page.

Fourth, Plaintiff takes issue with Defendant's demand for documentation related to Plaintiff's personal finances. While most of Plaintiff's arguments regarding her personal

finances are in the context of the Go Fund Me campaign, there is an indication that Plaintiff's personal finances other than the Go Fund Me page may be at issue at the deposition. Plaintiff argues that information regarding her personal finances is irrelevant to whether her due process rights were violated by Defendant's conduct of the administrative hearing. Plaintiff asserts that Defendant is trying to harass and burden her by demanding documents related to her personal finances and questioning her regarding her personal finances. Plaintiff contends that Defendant is also harassing Plaintiff by serving her with interrogatories to collect a judgment for the writ petition in state court. Defendant correctly points out that Plaintiff placed her financial state at issue in this matter by contending in her motion for preliminary injunction that she has a financial hardship. However, the Court finds that any information regarding Plaintiff's finances that is disclosed during Plaintiff's deposition, including documentation, shall only be used in this action. Plaintiff's financial information may not be utilized in the state court action or other matters outside of this action.

Fifth, Plaintiff takes issue with Defendant's demand for any and all documents, of any nature, maintained by Plaintiff regarding Armani. Plaintiff contends that it is inconceivable that such records could shed light on the procedural due process issues in this case. However, given the liberal standard for relevancy and as the documents are proportional to the needs of the case, the Court finds that documents maintained by Plaintiff regarding Armani are permissible discovery in this action.

Therefore, the Court shall grant a protective order in this matter forbidding inquiry into the Go Fund Me page and its contributors and limiting the use of Plaintiff's personal financial information obtained during her deposition to this matter only.[2]

To assure Plaintiff's deposition proceeds smoothly, the Court advises counsel of the requirements for a deposition. Under Rule 30(c):

> An objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the

---

[2] The Court notes that the questions of whether Plaintiff should be subject to an oral deposition and the subject matter of that deposition would have been appropriate for the informal discovery process, which is designed to avoid litigation costs and the unnecessary and collateral focus on sanctioning a party.

> examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Fed. R. Civ. P. 30(c)(2). If an actual, legitimate question arises during the course of Plaintiff's deposition, the Court is available to resolve the issue.

Finally, the Court addresses Defendant's request for sanctions. Defendant asserts that if the Court denies Plaintiff's motion for a protective order, the Court should impose monetary sanctions jointly and severally against Plaintiff and her attorney, Marla Tauscher, pursuant to Rule 37(a)(5)(B). Here, the Court is granting in part Plaintiff's motion for a protective order and imposing a protective order in this matter. While Rule 37(a)(5)(C) allows for a court to apportion the reasonable expenses for the motion if the motion is granted in part, in this instance, the Court finds that it is not appropriate to apportion the expenses. The positions of both parties were substantially justified and the Court denies Defendant's request for sanctions.

## IV.

## ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. The March 21, 2018 hearing on Plaintiff's motion for a protective order (ECF No. 32) is VACATED;

2. Defendant's motion to compel is DENIED as premature;

///

///

///

///

///

///

///

3. Plaintiff's motion for a protective order (ECF Nos. 31, 32) is GRANTED IN PART as follows: Plaintiff shall be produced for a deposition on March 6, 2018. However, Plaintiff shall not be deposed or have to produce any documentation at her deposition regarding the Go Fund Me page for Armani, the contributions to that Go Fund Me page, and the donors for that Go Fund Me page. Further, information regarding Plaintiff's finances that is disclosed during Plaintiff's deposition, including documentation, shall only be used in this action; and

4. Defendant's request for sanctions is DENIED.

IT IS SO ORDERED.

Dated: __**February 26, 2018**__

UNITED STATES MAGISTRATE JUDGE