# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| KIMBERLY RENEE STOKES, | Case No. 1:17-cv-01350-SAB |
|---|---|
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS |
| v. | |
| CITY OF VISALIA, | (ECF Nos. 35, 36, 37) |
| Defendant. | |

Plaintiff Kimberly Renee Stokes ("Plaintiff") filed this civil rights action pursuant to 42 U.S.C. § 1983. Currently before the Court is Defendants' motion for judgment on the pleadings.

The Court heard oral argument on June 6, 2018. Counsel Laura Portillo appeared telephonically for Plaintiff and counsel Leonard Herr appeared for Defendant City of Visalia ("Defendant" or "City"). Having considered the moving, opposition and reply papers, exhibits attached thereto, arguments presented at the June 6, 2018 hearing, as well as the Court's file, the Court issues the following order.

## I.

## PROCEDURAL HISTORY

On October 9, 2017, Plaintiff filed the complaint and a motion for a temporary restraining order in this action against the City of Visalia ("Defendant" or "City") seeking damages and injunctive relief for alleged due process violations based on the seizure of her dog after he was found to be vicious. (ECF No. 1.) On October 10, 2017, District Judge Dale A. Drodz conducted a telephonic conference regarding the motion for a temporary restraining order. (ECF

No. 9.) Counsel for Defendant appeared and advised the court that he would take steps to ensure that the dog was not euthanized prior to the court's ruling on the motion. (Id.) A briefing scheduled was issued for Plaintiff to file a motion for a preliminary injunction. (Id.)

On October 24, 2017, Plaintiff filed a motion for a preliminary injunction. (ECF No. 12.) Defendant declined to proceed before a magistrate judge on October 25, 2017, and an answer was filed on October 30, 2017. (ECF Nos. 14, 16.) On November 7, 2017, Defendant filed an answer and Plaintiff filed a reply on November 14, 2017. (ECF Nos. 17, 18.) Plaintiff filed a consent to the jurisdiction of the magistrate judge on December 21, 2017. (ECF No. 21.) On December 12, 2017, Judge Drodz issued an order denying Plaintiff's motion for a temporary restraining order and denying Plaintiff's request for a preliminary injunction. (ECF No. 26.) On December 18, 2017, Defendant consented to to the jurisdiction of the United States magistrate judge and the matter was reassigned to the undersigned for all purposes. (ECF Nos. 27, 29.)

The scheduling order in this action issued on December 20, 2017. (ECF No. 30.) On February 16, 2018, Defendant filed a motion for discovery seeking to compel Plaintiff's deposition and a request for monetary sanctions. (ECF No. 31.) On February 22, 2018, Plaintiff filed a motion for a protective order. (ECF No. 32.) On February 26, 2018, an order issued denying Defendant's motion to compel as premature, denying the request for sanctions, and granting in part Plaintiff's motion for a protective order. (ECF No. 34.)

On May 4, 2018, Defendant filed the instant motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (ECF No. 35.) Plaintiff filed an opposition on May 23, 2018. (ECF No. 36.) On May 30, 2018, Defendant filed a reply. (ECF No. 37.)

On June 2, 2018, Plaintiff filed a motion for a preliminary injunction. (ECF No. 38.)

## II.

## ALLEGATIONS IN INSTANT AND STATE COURT ACTION

### A. Allegations in Instant Complaint

Plaintiff lives in the City of Visalia and owns three dogs, one of which is named Armani. (Compl. ¶¶ 11, 12.) Armani is the subject matter of this litigation.

1   At approximately 8:30 on the morning of January 31, 2017, Plaintiff's neighbor Stephen Stewart ("Stewart") called Visalia Animal Control to complaint that dogs belonging to Plaintiff had attacked his dogs. (Id. at ¶ 14.) That same day, Animal Control officer Murad Bayless ("Bayless") went to Stewart's residence and took a report documenting the incident. (Id. at ¶ 15.) The report included the statements of two eye witnesses, Darlene Martin ("Martin") and Guy Schiebelhut ("Schiebelhut"). (Id. at ¶ 15.)

Plaintiff is a nurse and had been working the night shift the previous evening. (Id. at ¶ 16.) At the time of the incident, she was asleep in her home. (Id. at ¶ 16.) While Plaintiff was sleeping, she got a call from her mother that a neighbor had called because two of her dogs were outside of her yard. (Id. at ¶ 16.) The two dogs, Armani and Mademoiselle, had found a weak plank in the fencing surrounding Plaintiff's backyard and crawled through a hole they made in the fence. (Id. at ¶ 17.) Plaintiff's dogs had never escaped her yard before, and have not done so since. (Id. at ¶ 17.)

After being awoken, Plaintiff went outside and found her dog, Mademoiselle, sitting in the middle of the street. (Id. at ¶¶ 18–19.) Plaintiff saw Stewart's dog, Andy, running loose so she put him in Stewart's house. (Id. at ¶ 20.) Plaintiff observed Armani sitting in Stewart's driveway and, upon approaching, she saw Stewart and noticed that his hand was bleeding. (Id. at ¶¶ 21, 22.) When she asked Stewart if he needed any help, he told her to go away. (Id. at ¶ 22.) Plaintiff returned home with both of her dogs. (Id. at ¶ 22.) Shortly thereafter, Bayless went to Plaintiff's house and seized both Armani and Mademoiselle. (Id. at ¶ 23.) Armani has remained at the Visalia Animal Control facility ever since. (Id. at ¶ 23.)

When he seized Plaintiff's dogs, Bayless provided Plaintiff with several documents, which he collectively referred to as a "vicious hearing packet." (Id. at ¶ 24.) One of these documents was entitled "Owner's Request for a Hearing," which stated in relevant part that Plaintiff would be required to pay $350 to receive an administrative hearing to attempt to secure the return of her dogs. (Id. at ¶¶ 24, 25.) The form also stated that her failure to pay the fee would result in her request for hearing being considered invalid and the disposition of the dog would continue pursuant to section 6.16.070 of the Visalia Municipal Code. (Id. at ¶ 25.)

1 An administrative hearing was held on February 13, 2017. (Id. at ¶ 28.) Plaintiff appeared at that time with two witnesses. (Id. at ¶ 28.) Attorney Thomas E. Hornburg ("Hornburg"), who is regularly hired by defendant to preside over administrative hearings, was the hearing officer. (Id. at ¶¶ 29, 30.) At the outset of the hearing, Hornburg informed the participants that both Armani and Mademoiselle had been deemed "vicious" by Animal Control, and that the burden was on Plaintiff to establish that her dogs were not vicious. (Id. at ¶ 31.) He also informed the participants that the hearing would be conducted in an informal manner, and that he could consider any evidence he deemed relevant to the issues at hand, including hearsay evidence, and that there would be no cross-examination of witnesses. (Id. at ¶ 31.) Plaintiff and Stewart then recounted their recollections of the events at the hearing. (Id. at ¶¶ 33–34, 38-54.) Plaintiff's witnesses testified about dog behavior generally, but neither of them had any knowledge of the events at issue in the hearing. (Id. at ¶ 35.) Plaintiff did not see the four reports that were prepared by Bayless until she obtained the administrative record of the hearing. (Id. at ¶ 37.) During the hearing, Stewart testified that two of Plaintiff's dogs had bitten his dogs a year earlier. (Id. at ¶ 44.) Plaintiff testified that she had taken two of her dogs outside to relieve themselves and that Armani had gotten ahold of the harness of one of Stewart's dogs but let it go. (Id. at ¶¶ 47, 48.) Plaintiff now contends that she was mistaken and it was her third dog that was involved in the prior attack. (Id. at ¶ 49.)

On February 14, 2017, Hornburg issued a written decision in which he concluded that Mademoiselle was not vicious and should be returned to Plaintiff, but that Armani was vicious and should be euthanized as this was the second incident between the parties and that no remediation had occurred after the first incident. (Id. at ¶¶ 56–57.) Plaintiff then retained counsel and filed a petition for a writ of mandate in the Tulare County Superior Court. (Id. at ¶ 60.) Plaintiff retained substitute counsel and in May 2017, on the advice of her then-counsel, she agreed to dismiss that petition in exchange for an agreement to have Armani evaluated by professional dog trainers. (Id. at ¶¶ 61–64.)

Two behavior assessments were then submitted to Hornburg, both of which concluded that Armani was not aggressive. (Id. at ¶ 65; ECF No. 17-1 at 101–110.) Defendant, in turn,

submitted a declaration by Animal Control supervisor Ivy Ruiz stating that she had observed aggressive behavior by Armani. (Id. at ¶ 66; ECF No. 17-1 at 96–97.) Plaintiff had not wanted to dismiss the petition for a writ of mandate, and as a result she terminated her prior counsel who had advised her to do so. (Id. ¶¶ 63, 68.) Plaintiff then hired an attorney who filed a motion to set aside the dismissal of the writ of mandate, which was granted, and Plaintiff's petition for a writ of mandate was reinstated in early July 2017. (Id. at ¶¶ 69, 70.) On September 28, 2017, the Tulare County Superior Court denied the petition. (Id. at ¶ 71.)

Plaintiff brings this action alleging that her due process rights under 42 U.S.C. § 1983 have been violated because she received inadequate notice regarding the February 13, 2017 administrative hearing, the burden of proof was unlawfully shifted upon her to affirmatively prove that her dogs were not vicious, and she was unlawfully prohibited from cross-examining witnesses at the administrative hearing. (Id. at pp. 10-14.) Further, Plaintiff contends that Hornburg was biased in favor of Defendant at the hearing and that Hornburg and Defendant engaged in unlawful *ex parte* communication prior to the hearing. (Id. at pp. 14-16.) Plaintiff seeks monetary damages and injunctive relief.

### B. Allegations in Complaint Filed in State Court[1]

On March 6, 2017, Plaintiff filed a petition for a writ of mandate to set aside the determination that Armani was a vicious dog. (ECF No. 35-2 at 7-15.) Plaintiff owns a labrador retriever/pit bull mixed breed known as Armani that has been determined to be a vicious dog by the County of Tulare. (Id. at ¶ 1.) The determination was made based on a January 31, 2017 incident in which Plaintiff's dogs, Armani and Mademoiselle, left Plaintiff's property and went to the property of a neighbor, Stewart. (Id. at ¶ 3.) Armani was reported to have bit Stewart's dog, Jack'o, and Stewart received an injury to his hand due to separating the dogs. (Id.) Plaintiff arrived soon after the incident began and was able to assist separating the dogs and returned the

---

[1] Under the Federal Rules a court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice may be taken "of court filings and other matters of public record." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). Defendant's request for the Court to take judicial notice of the petition for writ of mandamus filed in state court is granted.

5

dogs to her property. (Id. at ¶ 4.) Armani also received injuries during the incident. (Id.)

On February 13, 2017, an administrative hearing was held to determine whether Armani was a vicious dog pursuant to Visalia City Code Title 6. (Id. at ¶ 5.) Hornburg acted as hearing officer. (Id.) On February 14, 2017, a determination was made that Armani was a vicious dog and would be destroyed. (Id. at ¶ 6.)

Plaintiff contended that the City failed to adequately weigh the evidence that Armani was not a vicious dog; given additional time Plaintiff would have been able to produce evidence that Armani was not vicious; the City failed to consider whether Armani's conduct was due to improper or negligent training, or handling or maintenance that would have allowed for alternate remedies; evidence was produced during the hearing that was not disclosed to Plaintiff prior to the hearing; and Plaintiff sought to introduce additional evidence that Armani was not a vicious dog. (Id. at ¶¶ 8-11.)

### C. State Court Proceedings

After the petition had been dismissed and reinstated, Plaintiff filed an opening brief in support of the petition to set aside the finding of vicious animal. (ECF No. 35-2 at 148-160.) Plaintiff argued that the hearing officer applied the wrong standards for the burden of proof and burden of producing evidence; he improperly discounted the validity of Plaintiff's experts; and the findings were not supported by the weight of the evidence or the substantial evidence in the record as a whole. (Id. at 149.)

On December 20, 2017, judgment was entered against Plaintiff and in favor of the City. (ECF No. 35-2 at 182-184.)

## III.

## LEGAL STANDARD

### A. Judgment on the Pleadings

Where a motion to dismiss is filed after the defendant has filed an answer it is governed by Rule 12(c) or 12(h)(2). Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 954 (9th Cir. 2004). Pursuant to Rule 12(c), "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the

pleadings is appropriate when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. <u>Hal Roach Studios, Inc., v. Richard Feiner and Co., Inc.</u>, 896 F.2d 1542, 1550 (9th Cir. 1989); <u>Fajardo v. Cty. of Los Angeles</u>, 179 F.3d 698, 699 (9th Cir. 1999).

In deciding a motion for judgment on the pleadings, the court accepts as true all allegations in the complaint and treats as false those allegations in the answer that contradict the complaint. <u>Elvig</u>, 375 F.3d at 955; <u>Hal Roach Studios, Inc.</u>, 896 F.2d at 1550. The court construes all material allegations in the light most favorable to the non-moving party. <u>Deveraturda v. Globe Aviation Sec. Servs.</u>, 454 F.3d 1043, 1046 (9th Cir. 2006).

Documents attached to, incorporated by reference in, or integral to the complaint may be properly considered under Rule 12(c) without converting the motion into one for summary judgment. <u>Rose v. Chase Manhattan Bank USA</u>, 396 F.Supp.2d 1116, 1119 (C.D. Cal. 2005) (citing <u>GFF Corp. v. Associated Wholesale Grocers, Inc.</u>, 130 F.3d 1381, 1384 (10th Cir. 1997). However, judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment. <u>Hal Roach Studios</u>, 896 F.2d at 1550. In deciding a motion for judgment on the pleadings, the court may consider facts that "are contained in materials of which the court may take judicial notice." <u>Heliotrope Gen., Inc. v. Ford Motor Co.</u>, 189 F.3d 971, 981 n.18 (9th Cir. 1999).

**B.  Res Judicata**

Defendant moves for judgment on the pleadings on the ground that Plaintiff's claims in this action are barred by the doctrine of res judicata. "Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." <u>Owens v. Kaiser Found. Health Plan, Inc.</u>, 244 F.3d 708, 713 (9th Cir. 2001) (quoting <u>Western Radio Servs. Co. v. Glickman</u>, 123 F.3d 1189, 1192 (9th Cir.1997)). Res judicata applies where there is identify of claims, final judgment on the merits, and identity or privity between the parties. <u>Stewart v. U.S. Bancorp</u>, 297 F.3d 953, 956 (9th Cir. 2002); <u>Owens</u>, 244 F.3d at 713. Although res judicata is an affirmative defense, a court may

dismiss an action on res judicata grounds based upon the facts alleged in the complaint and any facts that are properly subject to judicial notice. See Scott v. Kuhlmann, 746 F.2d 1377, 1378 (9th Cir. 1984). Res judicata is properly raised in a motion for judgment on the pleadings. See, e.g., Turtle Island Restoration Network v. U.S. Dep't of State, 673 F.3d 914, 920 (9th Cir. 2012).

## IV.

## DISCUSSION

Defendant contends that Plaintiff's claims in this action are barred by res judicata. Defendant argues that under California's primary right theory this action and the prior state court action are one and the same. Defendant argues that this action and the earlier state court action both arise from the administrative hearing about the same incident and involve the same primary right. Although the prior state court action was a petition for mandamus and this action seeks damages and injunctive relief that does not reduce the res judicata effect of the prior decision. Therefore, Defendant moves to dismiss this action as precluded by the prior state court judgment against Plaintiff.

Plaintiff counters that if judgment on the pleadings is entered, her beloved dog will be sentenced to death and that is not fair. Plaintiff argues that her right to due process encompasses more than just her right to a fair hearing. Plaintiff contends that in the mandamus proceed she was asserting her right to a fair hearing and, in this action, she is asserting a right to due process and to be free from enforcement of unconstitutional code provisions. Plaintiff states that if this court determines that she is seeking to address different injuries the motion must be denied.

Defendant replies that it is evident that Plaintiff loves her dogs and would do anything to save them, but that should not be the basis for deciding this motion. Defendant contends that the City Code provides that vicious animals are to be humanely destroyed and Plaintiff has presented no authority that the City is required to consider other options and doing so would potentially cause the City to be liable were Armani to attack or bite another animal or person.[2] Further,

---

[2] While Plaintiff argues that Armani has never bitten a person, the hearing officer based his decision on the evidence in the record that on two occasions Armani attacked the same dogs. Pursuant to section 16.16.050(C) of the Visalia Municipal Code, an animal can be presumed dangerous or vicious where it has bitten or caused injury to a human being or other animal and the burden is on the owner to present evidence that the animal is not dangerous or vicious. (ECF No. 35-2 at 19.)

1  Defendant argues the due process claims brought here are part of the same primary right and had
2  to have been brought in the prior state court action.

3     **A.    Mandamus Proceedings May Have Preclusive Effect for the Purposes of Res Judicata**
4

5  Federal courts must give a state court judgment the same preclusive effect it would be
6  given under the law of the state in which the judgment was rendered. Migra v. Warren City Sch.
7  Dist. Bd. of Educ., 465 U.S. 75, 81 (1984); Clark v. Yosemite Cmty. Coll. Dist., 785 F.2d 781,
8  784 (9th Cir. 1986). Although neither of the parties have raised the issue, the Court finds it
9  appropriate to determine whether a mandamus proceeding would have preclusive effect under
10 California law for the purposes of res judicata.

11  In Clark, the Ninth Circuit recognized that "[i]t is well established in California that the
12 doctrine of res judicata applies to judgments in mandamus proceedings." Clark, 785 F.2d at 784
13 n.1. Thereafter, the California Supreme Court addressed whether res judicata applied to bar a
14 civil rights action where the plaintiff had previously filed a writ of mandate in Mata v. City of
15 Los Angeles, 20 Cal. App. 4th 141 (1993). In Mata, after a police officer was terminated for
16 misconduct, he sought and obtained a writ of mandate requiring him to be reinstated. Id. at 143.
17 The officer subsequently filed a civil rights action seeking compensatory damages for violation
18 of his civil rights. Id. The trial court granted the defendant's motion for summary judgment on
19 the ground that some of the claims were barred by the relief granted in the writ proceedings. Id.
20 The plaintiff appealed and the California Supreme Court reversed. Id.

21  The Mata court stated that the only issues requiring resolution were "whether appellant's
22 claims pursuant to 42 United States Code section 1983 are barred by the doctrine of claim
23 preclusion (or res judicata) as a result of the relief awarded in the administrative mandamus
24 proceedings and if not, whether the doctrine of issue preclusion (or collateral estoppel) bars
25 appellant from litigating in his 1983 action issues which were decided in his favor in the
26 mandamus proceeding." Mata, 20 Cal.App.4th at 149. The Court found that the second suit,
27 alleging the section 1983 action, was a different cause of action and continued "[i]n fact, the
28 mandamus proceeding is technically not regarded as an action at all. It is, instead, described as a

special proceeding." Id. However, the mandamus action could not be ignored and discussion continued in the context of issue preclusion. Id. at 149-50. The Court held that since the plaintiff had not brought another action in state or federal court, and had prevailed on his mandamus action, California law expressly allowed a tort action. Id. at 151.

The Ninth Circuit considered the issue of whether a mandamus proceeding would be given preclusive effect under California law for res judicata in Honey v. Distelrath, 195 F.3d 531 (9th Cir. 1999). In Honey, after a prison guard was terminated, he brought a mandamus proceeding in state court. 195 F.3d at 532. The state court granted the writ of mandate and ordered the plaintiff to be reinstated with back pay and full benefits. Id. The plaintiff then filed a civil rights action which was removed to federal court by the defendants. Id. The trial court granted the defendants' motion for judgment on the pleadings on the ground that the successful state action satisfied due process and precludes a future claim under section 1983. Id.

On appeal, the Ninth Circuit reversed finding that "[b]ecause the state proceeding was a mandamus action, the ordinary claim preclusion rules that bar parties from relitigating claims already decided by courts on the merits do not apply here." Honey, 195 F.3d at 533. The Court held that the rule in California was set forth in Mata, "in which the California supreme court held that a mandamus action is a 'special proceeding' and does not bar a subsequent § 1983 action." Id. The Ninth Circuit cited Honey with approval in Weinberg v. Whatcom Cty., 241 F.3d 746, 750 (9th Cir. 2001).

In Johnson v. City of Loma Linda, 24 Cal.4th 61 (2000), the California Supreme Court considered whether the denial of a writ of mandate because of the defense of laches would be a judgment on the merits for res judicata purposes. Johnson, 24 Cal. 4th at 76-77. The Court held that it would not because a judgment on the defense of laches is not a judgment on the merits which is a requirement for res judicata to apply. Id. at 77.

Subsequently, a California appellate court addressed Mata in deciding whether res judicata would apply to mandamus proceedings. Fed'n of Hillside & Canyon Associations v. City of Los Angeles, 126 Cal.App.4th 1180, 1204, (2004). The court viewed Mata's statement regarding mandamus as a special proceeding "as an attempt to explain why the causes of action

were not the same, rather than a holding that res judicata was inapplicable because the prior ruling was in a special proceeding." Id. at 1205. The appellate court found no reason to distinguish between actions and special proceedings for the purposes of res judicata if the requirements of the doctrine are satisfied and the issues in the later proceeding could have been asserted in the prior proceeding. Id. The court referenced section 1908 of the California Code of Civil Procedure which states " 'a judgment or final order in an action or special proceeding' is conclusive as to 'the matter directly adjudged.' " Id. Additionally, the court found that "the California Supreme Court has held that a judgment on the merits in a mandamus proceeding is res judicata and is conclusive on all issues that were raised or could have been raised in the proceeding." Id. (quoting Hollywood Circle, Inc. v. Department of Alcoholic Beverage Control, 55 Cal.2d 728, 733 (1961) and citing Caminetti v. Board of Trustees, 1 Cal.2d 354, 356 (1934)).

The Ninth Circuit has since recognized that res judicata does apply to mandamus actions and they may preclude further litigation. Manufactured Home Communities Inc. v. City of San Jose, 420 F.3d 1022, 1031 n.12 (9th Cir. 2005); see also Wolin v. City of Los Angeles, 524 F. App'x 331, 332 (9th Cir. 2013) (unpublished) (It is settled under California law "that the doctrine of res judicata applies to judgments on the merits in proceedings in mandamus.").

Therefore, the Court finds that a mandamus preceding on the merits does have preclusive effect under California law if the other requirements of res judicata exist.

**B.    Res Judicata**

1.    Legal Standard

"Under the Federal Full Faith and Credit Statute, 28 U.S.C. § 1738, 'a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.' " Takahashi v. Bd. of Trustees of Livingston Union Sch. Dist., 783 F.2d 848, 850 (9th Cir. 1986) (quoting Migra, 104 S. Ct. at 896). Therefore, California law determines the preclusive effect that the mandamus action has on Plaintiff's section 1983 claims in this action.

Under California law, claim preclusion is the "primary aspect" of res judicata and "acts to bar claims that were, or should have been, advanced in a previous suit involving the same

11

parties." DKN Holdings LLC v. Faerber, 61 Cal.4th 813, 824 (2015). "Claim preclusion arises if a second suit involves: (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." DKN Holdings LLC, 61 Cal.4th at 824. "If claim preclusion is established, it operates to bar relitigation of the claim altogether." Id.; see also Boeken v. Philip Morris USA, Inc., 48 Cal.4th 788, 792 (2010) ("The doctrine of res judicata prohibits a second suit between the same parties on the same cause of action.")

"The party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment." Clark v. Bear Stearns & Co., 966 F.2d 1318, 1321 (9th Cir. 1992). "It is not enough that the party introduce the decision of the prior court; rather, the party must introduce a sufficient record of the prior proceeding to enable the trial court to pinpoint the exact issues previously litigated." United States v. Lasky, 600 F.2d 765, 769 (9th Cir. 1979).

2. <u>Both actions involve the same primary right</u>

Here, the only issue presented is whether this action and the prior mandamus action assert the same cause of action for the purposes of res judicata. Defendants argue that both this action and the prior mandamus action involve the same right, the right to a fair hearing. Defendants also contend that even if the claims can somehow be described as different primary rights, they are still precluded because they should have been brought in the Superior Court. Defendants state that this action is an improper splitting of the cause of action, or at the least, represents a claim that should have been brought in the Superior Court action and seek judgment on the pleadings.

Plaintiff counters that this action involves a different primary right than that brought in the state court action. Plaintiff contends that the state court proceeding involved the right to a fair hearing and this action asserts the right to be free from enforcement of unconstitutional code provisions. Plaintiff argues that the prior case involved only the right to a fair hearing which is only a part of her due process claim.

Defendant replies that Plaintiff's claims here are all part of the same primary right, the right to a fair hearing. Defendant also contends that Plaintiff's argument is based on a

substantial misreading of the municipal code and, even if she is challenging the provisions that require her to pay a hearing fee or fees for boarding her dog, she would be entitled to monetary damages and not return of her dog.

"Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief." Mycogen Corp. v. Monsanto Co., 28 Cal.4th 888, 897 (2002) (quoting Weikel v. TCW Realty Fund II Holding Co., 55 Cal.App.4th 1234, 1245 (1997)). To determine whether the two suits involve identical causes of action for the purposes of claim preclusion, California applies a "primary rights theory. Boeken, 48 Cal.4th at 797. For the purposes of res judicata, the phrase "cause of action" has a precise meaning. Id. at 798. "The cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." Id.; see also Hi-Desert Med. Ctr. v. Douglas, 239 Cal.App.4th 717, 734 (2015), as modified (Sept. 15, 2015) ("The fact that the [plaintiff] may be pursuing or adding a different remedy for the same injury does not create a new primary right."). "Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief." Boeken, 48 Cal.4th at 798. Therefore, the determinative factor under the primary rights theory is the harm suffered, and where two actions involve the same parties and are seeking the same compensation for the same harm, they generally involve the same primary right. Id.

"[T]he primary right is simply the plaintiff's right to be free from the particular injury suffered" and is distinguishable from the legal theory on which liability is established. Mycogen Corp., 28 Cal.4th at 904. One injury gives rise to only one claim for relief. Id. Under the "primary rights" theory "the significant factor is the harm suffered; that the same facts are involved in both suits is not conclusive." Agarwal v. Johnson, 25 Cal. 3d 932, 954–55, 603 P.2d 58, 72 (1979), disapproved of on other grounds by White v. Ultramar, Inc., 21 Cal. 4th 563, 981 P.2d 944 (1999).) However, the harm suffered is to be distinguished from the remedy sought and the same primary right may entitle a plaintiff to multiple forms of relief. Mycogen, 28 Cal.4th at 904.

1    In this instance, Plaintiff's dogs got out of her yard and attacked her neighbor's dogs
2    which resulted in her dogs being confiscated and determined to be vicious by animal control.
3    Plaintiff received a hearing during which Mademoiselle was determined not to be vicious, but
4    Armani was determined to be vicious pursuant to Visalia Municipal Code Chapter 6.16[3] and was
5    ordered to be humanely destroyed. (ECF No. 35-2 at 17-22, 70.)

6    In the state court action, Plaintiff alleged that the City failed to adequately weigh the
7    evidence that Armani was not a vicious dog; given additional time Plaintiff would have been
8    able to produce evidence that Armani was not vicious; the City failed to consider whether
9    Armani's conduct was due to improper or negligent training, or handling or maintenance that
10   would have allowed for alternate remedies; evidence was produced during the hearing that was
11   not disclosed prior to Plaintiff prior to the hearing; and Plaintiff sought to introduce additional
12   evidence that Armani was not a vicious dog. (ECF No. 35-2 at ¶¶ 8-11.)

13   In this action, Plaintiff alleges that she received inadequate notice regarding the February
14   13, 2017 administrative hearing, the burden of proof was unlawfully shifted upon her to
15   affirmatively prove that her dogs were not vicious, and she was unlawfully prohibited from
16   cross-examining witnesses at the administrative hearing. (Id. at pp. 10-14.) Further, Plaintiff
17   contends that Hornburg was biased in favor of Defendant at the hearing and that Hornburg and
18   Defendant engaged in unlawful *ex parte* communication prior to the hearing. (ECF No. 1 at pp.
19   14-16.)

20   In both actions, Plaintiff has challenged whether she received a fair hearing prior to
21   Armani being determined to be a vicious dog which requires that he be humanely destroyed.
22   The primary right at issue in both this and the prior state court action is Plaintiff's right to a fair
23   hearing in determining if her dog was vicious.

24   Plaintiff argues that more than her right to receive a fair hearing is at issue in her due
25   process claim. Plaintiff contends that the City cannot order for a dog to be killed when more
26   humane methods of removal are available; the City cannot require her to pay to get a hearing;

---

[3] Visalia Municipal Code 6.16.020 defines a "dangerous/vicious animal" as "an animal determined by the animal control officer to have attacked, bitten or caused injury to any human or other animal." (ECF No. 35-2 at 17.)

1 and the City cannot force her to pay a boarding fee to keep her dog. Defendant contends that the
2 City Code allows the hearing officer the discretion to determine if the dog can be released. But,
3 once the animal is determined to be vicious the Code requires the dog to be humanely destroyed
4 and Plaintiff has not cited, nor is there any, legal authority that requires the City to consider
5 lesser alternatives.

6 Plaintiff is alleging a due process violation and the prior state court judgment requiring a
7 fair hearing would be entitled to res judicata effect. In both this and the State Court action,
8 Plaintiff was seeking injunctive relief to prevent the City from humanely destroying Armani and
9 to invalidate the decision of the administrative hearing officer. Further, based on the argument at
10 the June 6, 2018 hearing, it is clear that Plaintiff's claim is that she did not receive a fair hearing
11 and the remedy that Plaintiff is seeking is an order for the County to provide another hearing to
12 determine whether Armani is a dangerous dog.

13 At the hearing, Plaintiff cited Citizens for Open Access to Sand & Tide, Inc. ("Citizens
14 for Open Access") v. Seadrift Ass'n, 60 Cal. App. 4th 1053, 1065 (1998), to argue that there is
15 an equity exception to res judicata that should be applied in this case. In Citizens for Open
16 Access, a complaint was filed for implied dedication and declaratory and injunctive relief on
17 behalf of the public seeking public access to beachfront property. Id. at 1062-63. There had
18 been previously litigation of the matter and a settlement agreement had been reached in one of
19 the prior suits. Id. at 1062. The language that Plaintiff relies on is included in the legal standard
20 for res judicata. The court stated that even if the threshold requirements are established, "res
21 judicata will not be applied 'if injustice would result or if the public interest requires that
22 relitigation not be foreclosed.' "[4] Id. at 1065 (quoting Consumers Lobby Against Monopolies v.
23 Public Utilities Com., 25 Cal.3d 891, 902 (1979)).

24 The Citizens for Open Access court found that the issues presented in the prior action
25 were the same, recreational use of the beach is common to all members and the plaintiffs had not

---

[4] The California Supreme Court and appellate courts have questioned the validity of the holding that courts may refuse to apply res judicata when doing so would constitute manifest injustice. See Slater v. Blackwood, 15 Cal.3d 791, 796-97 (1975) (finding that later change in law does not preclude application of res judicata; Louie v. BFS Retail & Commercial Operations, LLC, 178 Cal.App.4th 1544, 1562 (2009) (assuming continuing viability of the manifest injustice exception to res judicata).

15

pursued individual claims that were distinctive from the property rights of the public that had been adjudicated in the prior action. Id. at 1069. Therefore, the identity of the issues had been established. Id. The parties were in privity for the purposes of applying res judicata. Id. at 1070-71. The court found no policy considerations to refuse to refuse to invoke the doctrine of res judicata. Id. at 1075. "In fact, two fundamental policy considerations-promotion of judicial economy and protection of litigants from unnecessary litigation-are furthered by imposing res judicata as a bar to appellant's present action." Id. Public policy and the interest of the participating parties required that the issue of public access to the beach reach closure. Id. The California Supreme Court has subsequently recognized that public policy considerations may warrant an exception to res judicata where the issue is a question of law, rather than fact. People v. Barragan, 32 Cal.4th 236, 256 (2004).

Here, Plaintiff had a full opportunity to bring her due process claim in the state court which decided that Plaintiff had received a fair hearing. The Court finds no reason to apply an equitable exception to the doctrine of res judicata in this instance. Although Plaintiff argues public policy exceptions should apply to preclude the City from destroying Armani, she received a hearing in which Armani was declared to be a vicious dog. She brought the state court writ of mandate seeking a determination that she was denied a fair hearing during the vicious dog proceedings. The state court denied the writ of mandate and entered judgment for the defendant. The important public policy of promotion of judicial economy and protecting litigants from unnecessary litigation are furthered by imposing res judicata to bar further litigation of this same issue.

Plaintiff appears to argue that public policy should preclude the application of res judicata because Armani has been ordered to be destroyed. While the Court is sympathetic to Plaintiff's emotional attachment to Armani and the loss that she is experiencing, the public also has an interest in being protected from vicious animals.

To the extent that Plaintiff argues that it is manifestly unjust to destroy Armani because the state court decision was wrongly decided, the Court finds this is not a proper ground to refuse to apply the doctrine. Under Plaintiff's argument, res judicata would never be applied where

there was a challenge that the prior decision was wrong because it would always be inequitable to hold a litigant to a wrongly decided judgment. Compare City of Los Angeles v. City of San Fernando, 14 Cal.3d 199, 230 (1975) disapproved of on other grounds by City of Barstow v. Mojave Water Agency, 23 Cal.4th 1224 (2000), (it would be unjust to one party or a third party to apply one rule of law in subsequent actions between the same parties and to apply a different rule of law between other persons). Plaintiff's claim in this action is that the state court came to the wrong decision. Therefore, her remedy is to appeal the writ of mandate, not to seek to have this Court reverse the state court determination and not to relitigate the matter in federal court.

Under California law, Plaintiff was required to bring all her claims challenging whether she received a fair hearing in the state court action. DKN Holdings LLC, 61 Cal.4th at 824. This would include Plaintiff's claim that charging her a fee to obtain a hearing violated her due process rights,[5] that the administrative hearing officer improperly shifted the burden of proof to her during the hearing, that she was not allowed to cross examine witnesses, that the hearing officer was biased, and the hearing officer had *ex parte* communication with Animal Control. Further, to the extent that Plaintiff is seeking to reverse the hearing officer's determination that Armani is a dangerous dog and should be destroyed, this would fall within the fair hearing claim. Plaintiff cannot bring this action challenging the hearing in which Armani was determined to be a vicious dog or the determination that he was a vicious dog and must be humanely destroyed. These are the same claims that were raised or were required to be raised in the prior hearing and are entitled to res judicata under California law.

3. Plaintiff's complaint does not allege any claim on a different primary right

The question then for the Court to consider was whether any of the allegations in the

---

[5] In her complaint, Plaintiff alleges that there is no notice in the code section that a fee was required to obtain a hearing. (ECF No. 1 at ¶ 27.) The Court does take judicial notice that section 1.13.080(B) of the Visalia Municipal Code provides that "[a]ny responsible party seeking to appeal the imposition of an administrative penalty shall be required to pay the city clerk or designee, at the time the appeal is requested, a nonrefundable appeal fee." Section 1.13.080(D) if the Visalia Municipal Code provides that "[a]ny responsible party who is financially unable to pay the appeal fee or make the advance deposit of the full amount of the fine as required in subsection[] B . . . and intends to appeal the administrative enforcement order, may file a request for an advance hardship deposit waiver to waive all or part of the advance deposit and appeal fee." Accordingly, the Municipal Code does provide notice of the fee and an opportunity to have the fee waived. Further, since Plaintiff paid the fee and obtained a hearing she lacks standing to challenge the assessment of the fee as a due process violation.

complaint raise a due process claim beyond the denial of a fair hearing. Plaintiff's current argument is that she is challenging the code section which provides that a vicious dog must be destroyed. However, this claim was never raised in Plaintiff's complaint. Further, since this is the municipal code under which the hearing was provided, a challenge to the code should have been brought in the state court writ of mandate. See Hi-Desert Medical Center, 239 Cal.App.4th at 738 (even if the issue were deemed not to have been actually litigated, the challenge amounts to an improper collateral attack on that claim).

Plaintiff also argues that the requirement that she pay a boarding fee is unconstitutional. In her complaint, Plaintiff alleged that the City has a financial motive for rendering a decision against her because they charge a fee for boarding of impounded dogs during the pendency of the proceeding. (ECF No. 1 at ¶ 113.) Plaintiff also alleged that there is no legal authority for the City to require her to pay fees to board Armani. (Id. at ¶ 114.) The complaint states that this is akin to a penalty for exercising her constitutional right to appeal the determination that Armani was a vicious dog. (Id. at ¶ 115.) Plaintiff alleged that the City must not be permitted to demand a boarding fee during the pendency of this action. (Id. at ¶ 116.) While Plaintiff's complaint touches on the issues of the boarding fee, Plaintiff's complaint does not include sufficient factual allegations to place Defendant on notice that she was making a due process challenge to the boarding fees charged after Armani was impounded for attacking her neighbor's dogs.[6]

### C. Plaintiff's Complaint is Barred by Res Judicata

As discussed above, this action is based on the same primary right as the state court action and it is uncontested that the prior action involved the same parties. The state court

---

[6] Plaintiff cannot amend her complaint by arguments made in opposition to the motion for judgment on the pleadings. Pursuant to the scheduling order issued on December 20, 2017, any stipulation or motion to amend the complaint was required to be filed on or before January 18, 2018. (ECF No. 30 at 2.) Plaintiff did not move to amend her complaint to add a claim challenging the constitutionality of the boarding fee prior to the deadline to amend. Modification of a scheduling order requires a showing of good cause, Fed. R. Civ. P. 16(b), and good cause requires a showing of due diligence, Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). Rule 16's good cause standard considers the diligence of the party seeking amendment and the pretrial schedule may be modified if it cannot reasonably be met despite the diligence of the party seeking the amendment. Johnson, 975 F.2d at 609. Here, Plaintiff was clearly aware that she was being charged the boarding fee at the time that she filed her complaint. Although she was aware of the facts that would be the basis of a challenge to the fee regulation, Plaintiff did not move to amend her complaint within the time provided by the scheduling order to do so. Accordingly, the Court finds that Plaintiff is not able to show good cause to allow amendment to bring a claim based on the boarding fee at this stage of the proceedings.

considered whether Plaintiff had been provided with a fair hearing in determining that Armani was a vicious dog, declined to issue a writ, and entered judgment in favor of Defendant. (ECF No. 1 at ¶71; ECF No. 35-2 at 182-183.) Defendant has presented sufficient evidence for the Court to determine the issues that were litigated in the prior proceeding and that the denial of the writ of mandate was a decision on the merits. Lasky, 600 F.2d at 769.

For these reasons, the Court finds that Plaintiff's claims in this action are barred by the doctrine of res judicata. Murray v. Alaska Airlines, Inc., 50 Cal.4th 860, 867 (2010) ("A prior judgment for the defendant on the same cause of action is a complete bar to the new action.").

## V.
## CONCLUSION AND ORDER

For the reasons discussed herein, the Court finds that Plaintiff's claims in this action are barred by the doctrine of res judicata.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's motion for judgment on the pleadings is GRANTED;
2. The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant City of Visalia and against Plaintiff Kimberly Stokes; and
3. All pending dates and matters are terminated.

IT IS SO ORDERED.

Dated: **June 8, 2018**

UNITED STATES MAGISTRATE JUDGE